709 So.2d 834 (1998)
STATE of Louisiana
v.
Michael F. FRANCIS.
No. 97 KA 0201.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
Writ Denied May 8, 1998.
*835 Walter P. Reed, District Attorney, Covington, and Terry M. Boudreaux, Gretna, for State.
Frank Sloan, Covington, for Defendant-Appellant Michael F. Francis.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
*836 LOTTINGER, Chief Judge.
The defendant, Michael F. Francis, was charged by bill of information with one count of armed robbery, La.R.S. 14:64, and with two counts of second degree kidnapping, La. R.S. 14:44.1. He pleaded not guilty to all three counts. After a jury trial, he was found guilty as charged on all three counts. He moved for a motion for new trial and post-verdict judgment of acquittal, but the motions were denied.
Subsequently, the State filed a habitual offender bill of information, alleging that the defendant was a second felony habitual offender. After a habitual offender hearing, the defendant was adjudged to be a second felony habitual offender, pursuant to La.R.S. 15:529.1(A)(1)(a), as to all three counts and was sentenced to fifty years for the armed robbery offense, and forty years for each of the second degree kidnapping offenses. The trial court ordered that the sentences run concurrently and without benefit of probation, parole, suspension of sentence, or good time.[1]
The defendant now appeals, designating three assignments of error.

FACTS
The State presented facts to establish the elements of the defendant's crimes with testimony from one of the defendant's accomplices, John C. Markey, Jr., and with testimony from the victims of the crimes, Diane Fay Howard and Donald Harris. The testimony differed in regard to what the victims had been doing when the defendant committed his crimes against them. The State contended that Markey's testimony concerning that time frame was correct, and that the victims lied concerning only that time frame to avoid incriminating themselves in a drug deal.
Markey testified as follows. On May 18, 1994, while in the process of helping Loyd Wise move into Wise's new apartment, Markey met the defendant at the defendant's apartment. The defendant, Wise, and Markey, subsequently went to a daiquiri shop in Mandeville, where they discussed purchasing cocaine. Wise made a telephone call and arranged for some drug dealers (the victims) to bring cocaine to the defendant's apartment. The victims arrived at the defendant's apartment at approximately 10:00 p.m. After the victims arrived, the defendant, Wise, and Markey, tested the victims' cocaine by "snorting" it. Thereafter, the defendant went over to the couch, grabbed a sawed-off shotgun, and pointed it at the victims. The defendant ordered the victims to lie on the ground with their hands behind their backs. The defendant then grabbed a bandanna and a leather string and told Markey to tie the victims up, which he did. The defendant then "asked" Harris for the keys to Harris's vehicle. Harris told the defendant that the keys were in his (Harris's) pocket, and the defendant took the keys from Harris' pocket. The defendant, Wise, and Markey, forced the victims into Markey's vehicle, and the defendant took Harris's vehicle. Both vehicles were driven to Abita Springs, with the Markey vehicle following the Harris vehicle. In Abita Springs, the vehicles stopped at a small store, where the defendant and Wise began dividing the cocaine between themselves. At this point, Markey told the defendant and Wise that he was getting the "`F' out of [there]," and told Wise that if he wanted to leave, he should get into the car (Markey's vehicle) immediately. Wise got into Markey's vehicle along with Howard. The Markey and Harris vehicles were driven to a dirt road, where the victims were abandoned. During the course of the events of that night, Markey had overheard the defendant and Wise plan to abandon the Harris vehicle at the Abita Springs store. However, while Markey was driving his vehicle home, he saw the defendant drive the Harris vehicle past the Abita Springs store. During the course of the events of that night, Markey never heard either of the victims give permission to anyone to take Harris' money, his car, or the cocaine.
The victims testified as follows. On May 18, 1994, Howard flagged down her friend Harris and asked him for a ride home. On the way to Howard's home, Harris stopped at a gas station for gas, and Howard exited the *837 vehicle to use the bathroom. After Howard exited Harris's vehicle, a red car with three men pulled into the gas station. Harris knew one of the men, the defendant, and began talking to him. While Harris and the defendant were talking, one of the other men, Wise, confronted Howard and Harris with a sawed-off shotgun and ordered them into the red car. The defendant got into Harris' car and told the other men to follow him. The vehicles were driven down a road, across a highway and into a subdivision. When the vehicles stopped, Wise tied Howard's and Harris' hands and threatened to kill them, and the defendant asked Harris if he had any money. Harris answered the defendant affirmatively, telling him that he had eighty dollars. The defendant told Harris that the parole officer was looking for him (the defendant) and they had to get out of town. The defendant took Harris's eighty dollars, but then gave it back to him, asking for forty dollars, which Harris gave him. The men subsequently drove Howard and Harris to a dirt road, left them there, and told them where they would be able to find Harris's car.
Harris's vehicle, driven by the defendant, was subsequently pursued by a campground manager/former sheriff's deputy (after being driven through a campground, without its lights on). The defendant was apprehended after a high speed chase.

MOTIONS FOR MISTRIAL
In assignments of error numbers 1 and 2, the defendant challenges the trial court's denial of his motions for mistrial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case, the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by La.Code Crim.P. arts. 770 or 771. La.Code Crim.P. art. 775. The determination as to whether or not a mistrial should be granted under La.Code Crim.P. art. 775 is within the sound discretion of the trial court, and a denial of a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. State v. Young, 569 So.2d 570, 583 (La.App. 1st Cir.1990), writ denied, 575 So.2d 386 (La.1991).
La.Code Crim.P. art. 770(2) provides for a mandatory mistrial when a remark is made by the judge, the district attorney, or a court official within the hearing of the jury and such remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. However, such a remark by a witness does not require a mistrial if the court is satisfied that an admonition to the jury is sufficient to assure the defendant of a fair trial. La.Code Crim.P. art. 771. A mistrial pursuant to the provisions of article 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. See State v. Dixon, 620 So.2d 904, 911 (La.App. 1st Cir. 1993).
In assignment of error number 1, the defendant contends that the trial court erred in denying the motion for mistrial he made after the court replaced juror Adrian C. Miller, Jr. with an alternate juror.
On the second day of trial (November 7, 1995), outside of the presence of the jury, the trial court informed the State and the defense as follows:
Mr. Miller has come to me and told me that he does not feel that he can be fair and impartial on this particular jury, that he has real difficulty with a case of this nature where he feels there is no victim of the crime, and he is indicating to me that should we require him to remain on the jury that he does not feel that he can reach a decision and we might end up with a hung jury on that account.
Miller added, "I can handle a case of good guys and bad guys, but to me it's all bad guys and I just don't think I can decide one way or the other." Both the State and the defense subsequently questioned Miller.
The State asked Miller whether he felt that he had already decided the issues in the case without hearing the evidence and the testimony. The State then asked Miller whether he was saying that he could not render either the State or the defense a fair *838 trial. The State lastly asked Miller whether he had prejudged the case. Miller answered all three questions affirmatively. Defense counsel asked Miller whether his feelings were based upon what he had heard so far in the trial, and Miller responded affirmatively.
Additionally, Miller added, even without regard for the charges alleged by the State against the defendant in the case, there was no chance that he would render a not guilty verdict in the case because he believed that, "what [the alleged perpetrators and the alleged victims] should be in jail for has nothing to do with these charges in this case."
The defense objected to Miller's dismissal as a juror, and asked for a mistrial should the court dismiss Miller. The trial court dismissed Miller from the jury and replaced him with the first alternate juror.
The State argued there was no abuse of discretion in the trial court's denial of this motion for mistrial. Miller's comments established that he had become unable to perform his duties as a juror. Alternate jurors, in the order in which they are called, shall replace jurors who become unable to perform or disqualified from performing their duties prior to the time the jury retires to consider its verdict. La.Code Crim.P. art. 789 (prior to its amendment by 1995 La.Acts No. 364, § 1, and 1995 La.Acts No. 1273, § 1).
In assignment of error number 2, the defendant contends that the trial court erred in denying the motion for mistrial he made after Donald Harris mentioned a statement by the defendant concerning a parole officer looking for the defendant.
On direct examination, the following exchange occurred between the State and Donald Harris:
Q. What happened when he got on Slemmer Road?
A. They stopped the car.
Q. What had happened next?
A. They asked me did I have any money.
Q. Who asked you that?
A. Mikie.
Q. Mikie Francis?
A. Right.
Q. The man right there?
A. Right.
Q. What did you tell him?
A. I told him, yes, I had eighty dollars.
Q. Did you inquire as to why he needed money?
A. Yes. No, I didn't inquire, but he told me why.
Q. What did he say?
A. He told me the parole officer was looking for him and they had to get out of town.
Defense counsel moved for mistrial, arguing that the statement concerning the parole officer conveyed the defendant's prior conviction to the jury. The State responded that the statement was an integral part of the defendant's crimes and was res gestae. The trial court agreed with the State and denied defense counsel's motion.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. However, La.Code Evid. art. 404(B)(1) authorizes the admission of evidence of other crimes, wrongs, or acts when the evidence "relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." In State v. Brewington, 601 So.2d 656 (La.1992) (per curiam), the Louisiana Supreme Court indicated its approval of the admission of other crimes evidence, under this portion of La.Code Evid. art. 404(B)(1) "when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." 601 So.2d at 657.
There was no abuse of discretion in the trial court's denial of this motion for mistrial. Defense counsel argues that the statement cannot be considered res gestae because the undisclosed offense implicitly referenced by the statement was remote in time and nature to the offenses for which the defendant was being tried. However, the remoteness in time and nature of the undisclosed offense is irrelevant to the issue presented herein, i.e., *839 the admissibility of the statement itself. The statement concerning the parole officer constituted an integral part of the defendant's crimes, was part of the res gestae, and thus was excepted from the prohibition of other crimes evidence. See State v. McSweeney, 619 So.2d 861, 870 (La.App. 3d Cir.1993). Moreover, there was no unfairness or surprise to the defendant from the statement. The defendant's explanation of his motive for committing his crimes to a victim of those crimes, during the commission of those crimes, was "part and parcel" of the crimes charged.
These assignments of error are without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL
In assignment of error number 3, the defendant contends that he was denied the effective assistance of counsel when his appointed counsel failed to object to the improper closing argument of the prosecutor. The defendant argues that the State's comment in closing argument that, "We went through great thought and deliberation before turning this decision over to you, but we feel that under the law we had no other obligation other than to bring this evidence to you[,]" constituted a statement of personal knowledge of facts in issue or a statement of a personal opinion as to the justness of a cause in violation of LSBA Rules of Professional Conduct, Rule 3.4(e). The defendant then argues that trial defense counsel's failure to object to the comment constituted ineffective assistance of counsel.
Initially, we note that a claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and that issue is raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Williams, 632 So.2d 351, 361 (La. App. 1st Cir.1993), writ denied, 94-1009 (La.9/2/94); 643 So.2d 139.
The United States Supreme Court has established a two-part test for review of a convicted defendant's claim that his counsel's assistance was so defective as to require reversal of a conviction. In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the court stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. at 2064.
In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.
Immediately preceding the comment at issue, the State began its closing argument by stating, "I dare say this is probably one of the most interesting cases you will ever hear as a juror. I want to assure you that before we proceed any more the state did not bring this case to your attention lightly." The State then pointed out the fact that the issue for determination was whether or not crimes were committed, rather than the likeability of the victims. The State discussed the testimony it presented at trial and pointed out that it had been forced to present testimony from one of the defendant's accomplices because it did not believe that the victims were being completely truthful. The State commented *840 that while it did not believe all of the victims' testimony, the credible portion of the victims' testimony established the elements of the offenses. The State urged the jury to ignore its dislike of the victims and focus on the elements of the offenses.
Prior to opening arguments, the trial court instructed the jury that, "What the lawyers say in closing arguments is not evidence." After both sides had presented closing arguments, the trial court again instructed the jury that "Statements and arguments made by the attorneys are not evidence."
The challenged introductory comment during State closing argument, when taken in context, was based on the evidence presented rather than on personal knowledge of facts outside the record. See State v. Feet, 481 So.2d 667, 677-78 (La.App. 1st Cir.1985), writ denied, 484 So.2d 668 (La.1986). Thus, the comment was not outside the scope of closing argument, and trial defense counsel's failure to object did not constitute constitutionally deficient performance. Moreover, we are thoroughly convinced that the comment did not contribute to the verdict. Accordingly, we reject the defendant's argument that his trial counsel did not function as the "counsel" guaranteed by the Sixth Amendment. Additionally, we note that, even assuming arguendo that the comment was objectionable, and that trial defense counsel thus should have objected to the comment, the defendant was not prejudiced by the alleged deficient performance.
This assignment or error is without merit.

PATENT ERROR
Initially, we note that the minutes and the transcript of the sentencing hearing are inconsistent. Where there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732, 734 (La.1983). The sentencing transcript reflects that the court imposed sentence as follows:
I sentence you under the multiple offender statute, and I sentence you to, on the multiple bill for armed robbery, I sentence you to serve fifty years; second degree kidnapping still forty; second degree kidnapping again still forty. These will be on the multiple offender bill without benefit of probation, parole, or suspension of sentence.
They will still run concurrently or together. You are given credit for all time served.
....
Without benefit of probation, parole or suspension of sentence, without the benefit of good time, sentence to be served day for day.
The habitual offender information filed by the State herein, in pertinent part, provided:
That one MICHAEL FRANCIS on the 7th day of November, 1995, in the Twentysecond Judicial District Court, State of Louisiana, Parish of St. Tammany was convicted of violating R.S. 14:64 Armed Robbery and 14:44.1 2nd Degree Kidnapping, both felonies under the law of Louisiana in bill number 233687.
The said MICHAEL FRANCIS who was convicted of the felony, as set out above, in bill number 233687 is one and the same person as MICHAEL FRANCIS who pled guilty ... and that this is [MICHAEL FRANCIS'S] 2nd felony conviction and the said defendant should now be sentenced in conformity with the provisions of LA. R.S. 15:529.1....
The habitual offender bill incorrectly stated that, under bill of information number 233,687, the defendant had been convicted of two felonies. The defendant was actually convicted of three felonies under bill of information number 233,687. Then the bill referred to "the felony, as set out above," and sought penalty enhancement pursuant to the habitual offender law. The trial court interpreted the ambiguous bill to be seeking penalty enhancement of all three convictions under bill of information number 233,687, and consequently imposed three enhanced penalties.
Multiple convictions obtained on the same day for offenses arising out of one criminal episode should be considered as one conviction for purposes of applying the habitual offender law in sentencing. State ex rel. Porter v. Butler, 573 So.2d 1106, 1109 (La. *841 1991). In the instant case, all three of the defendant's convictions under bill of information number 233,687, arose out of one criminal episode. Therefore, it was error for the State to seek enhancement of more than one of the convictions, and it was error for the trial court to adjudicate the defendant as a habitual offender and impose an enhanced penalty for more than one of the convictions.
Accordingly, the instant sentences and habitual offender adjudications hereby are vacated. If the State again elects to institute habitual offender proceedings in this matter, it must amend the habitual offender information to specifically state upon which conviction penalty enhancement is sought.
We also note the following errors in the sentences imposed, which we bring to the trial court's attention.
None of the sentences imposed herein were imposed at hard labor. Pursuant to La.R.S. 14:64(B), an enhanced sentence for armed robbery must be imposed at hard labor. Similarly, an enhanced sentence for second degree kidnapping must be imposed, in part, at hard labor. See La.R.S. 14:44.1(C).
The trial court denied the defendant good time on the sentences imposed. When the terms of the statute under which a defendant is sentenced do not prohibit parole, it is error for a trial court to usurp the function of the Department of Public Safety and Corrections by addressing eligibility for parole. See State ex rel. Lewis v. State, 95-0731 (La.1/6/97); 685 So.2d 131; State v. Miller, 96-2040 (La.App. 1st Cir. 11/7/97); 703 So.2d 698. In the instant case, the defendant is not eligible for parole pursuant to La.R.S. 14:64(B) and pursuant to La.R.S. 14:44.1(C). Therefore, the trial court can, and should, deny the defendant parole. However, the trial court should not address the issue of the defendant's eligibility for diminution of sentence for good behavior (good time) pursuant to La.R.S. 15:571.3 (prior to amendment by 1994 La.Acts 3d Ex. Sess. No. 110, § 1; 1994 La.Acts 3d Ex.Sess. No. 149, § 1; 1994 La.Acts 3d Ex.Sess. No. 150, § 1; 1995 La. Acts No. 946, § 3; 1995 La. Acts No. 1099). All of the defendant's offenses were committed prior to the August 15, 1995, effective date of 1995 La.Acts No. 946, § 1, which added La.Code Crim.P. art. 890.1. While that article expressly gave the sentencing court authority to address eligibility for good time, application of La.Code Crim.P. art. 890.1 to deny good time eligibility on sentences imposed for crimes committed prior to the article's effective date violates the ex post facto clauses of the federal and state constitutions. State v. Singleton, 96-2380 (La.2/7/97); 688 So.2d 486.
This matter hereby is remanded to the trial court for further proceedings consistent with the views expressed herein.
CONVICTIONS AFFIRMED; HABITUAL OFFENDER ADJUDICATIONS AND SENTENCES VACATED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] We note numerous patent errors in the sentences imposed, which we discuss hereinbelow.