969 So.2d 1233 (2007)
STATE of Louisiana
v.
Shon P. SHAW.
No. 2006-KO-2467.
Supreme Court of Louisiana.
November 27, 2007.
*1234 Loyola Law School Clinic, Ramona G. Fernandez, Deborah Majeeda Snead, for applicant.
Charles C. Foti, Jr., Attorney General, Paul Carmouche, District Attorney, Catherine Marion Estopinal, Lea R. Hall, Jr., Assistant District Attorneys, for respondent.
WEIMER, Justice.
We granted certiorari in this case to consider the continuing validity of our decision in State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), which prohibited habitual offender enhancement of more than one conviction obtained on the same date arising out of a single criminal act or episode. The underpinnings of that decision were called into question by our recent decision in State v. Johnson, 03-2993 (La.10/19/04), 884 So.2d 568, which repudiated the jurisprudentially created "one day, one conviction" rule in determining a defendant's habitual offender status. In Johnson, we held that our previous interpretation of the effect of Act 688 of 1982, amending the Habitual Offender Law, LSA-R.S. 15:529.1, was incorrect, and that the amendment removed the statute's sequential requirement for enhanced penalties in the sentencing of multiple offenders. The Johnson decision was limited by *1235 its facts to the computation of predicate offenses for purposes of determining habitual offender status; it did not address whether the habitual offender statute precludes the enhancement of multiple sentences, entered on the same day, arising out of a single criminal act or episode. This case brings that issue, as well as the continuing validity of Porter, squarely before this court.
Defendant, Shon P. Shaw, was convicted of five felony offenses stemming from an episode of criminal behavior and was adjudicated a third felony offender based on two predicate offenses: a 1994 conviction for possession of a controlled dangerous substance and a 1998 conviction for unauthorized use of a movable. All five of defendant's sentences were enhanced under the Habitual Offender Law based upon his adjudication as a third felony offender. The defendant appealed, arguing that his sentences were illegally enhanced. Relying on Porter, defendant asserted that multiple sentences arising out of a single criminal episode cannot be enhanced under LSA-R.S. 15:529.1, and that, as a result, his sentences must be vacated and his case remanded for re-sentencing with the habitual offender bill applied to only one of his sentences. The court of appeal disagreed, finding that the rationale of Porter has been undermined by this court's decision in Johnson and the legislature's subsequent amendment of the Habitual Offender Law by 2005 La. Acts No. 218, and that, as a result, the district court did not err in applying third felony enhancement to all five of defendant's sentences. The defendant applied to this court for writs. We granted the defendant's application, primarily to consider whether all multiple sentences imposed after a single course of criminal conduct can be enhanced under the Habitual Offender Law, and to clarify whether Porter remains the controlling jurisprudence on this issue.
After examining the language of LSA-R.S. 15:529.1, the jurisprudence, and recent legislation regarding the same, we find that the lower courts correctly concluded that all multiple sentences imposed after a single course of criminal conduct can be enhanced under the Habitual Offender Law. To the extent that the opinions of this court in Porter and State v. Sherer, 411 So.2d 1050 (La.1982), are inconsistent with this conclusion, those opinions are expressly overruled. Finding no merit in the only other argument raised and briefed by the defendant, the alleged abridgement of his right to testify in his own behalf, we affirm the defendant's conviction, adjudication as a third felony offender, and sentences.

FACTS AND PROCEDURAL HISTORY
This matter stems from a series of events occurring on June 26, 2004. On that date, Karen Harris and some girlfriends, among them defendant's sister, Sheryl Jeter, were having dinner at an International House of Pancakes restaurant in Shreveport, Louisiana. Harris had recently ended a year long relationship with defendant, but, earlier on the day in question, had met with defendant and discussed resuming the relationship.
During the course of the dinner, defendant repeatedly called his sister's cell phone, asking to speak to Harris. When Harris refused to meet with defendant that evening, and stopped taking his calls, he became angry. At one point, defendant drove to the restaurant in search of Harris, but she hid in the restroom until police were called and defendant left the parking lot.
Defendant then traveled to his mother's home, where he insisted that his mother, Jessie Jeter, telephone his sister and ask *1236 her to bring Harris to Mrs. Jeter's house. Defendant's mother complied with her son's demands, but when she indicated to her daughter that it was defendant who wanted to see Harris, he became enraged, snatched the phone from his mother, and began hitting her in the head with it. Overhearing her mother's predicament, Sheryl Jeter asked the women to accompany her to her mother's home. Jeter, Harris, Shana Taylor, Marvette Jones, and Danielle Adams proceeded to Mrs. Jeter's home; Taylor and Jeter were in one car, with Harris, Jones, and Adams following in the Adams car.
When the women arrived at Mrs. Jeter's home, defendant and his mother emerged from the house. Harris remained in the back seat of the Adams vehicle, which was parked in the street at the end of the driveway. After exchanging words with Harris, defendant shouted at his mother to get into her car, which was parked in the driveway. When she resisted, defendant physically pushed his mother into the car and then jumped into the driver's seat. Suspecting defendant was going to back out of the driveway, Adams drove off, with Jones in the front passenger seat and Harris in the back. With his mother in the front seat of her vehicle, defendant proceeded to back out of the driveway and follow the Adams vehicle down the street.
Adams observed defendant following her. Suddenly, defendant accelerated and rammed the Adams vehicle from behind, knocking both cars off the roadway and into a pine tree. The Adams vehicle "accordioned," its rear end pushing up into the back seat area. The car's doors jammed, forcing its three occupants to climb out through a broken window. Both vehicles were totaled in the collision. Harris sustained two broken bones in her neck and multiple leg injuries, while defendant's mother suffered a broken pelvis and head injuries.
Unable to flee due to her injuries, Harris was approached by the defendant who proceeded to strike Harris on the back with a tree branch. Defendant subsequently led and intermittently dragged Harris into a nearby wooded area, where he continued to strike her with the tree branch. When police sirens were heard drawing near, Harris convinced defendant to let her go and she managed to escape to a nearby service station.
Following the issuance of an arrest warrant, defendant turned himself in to police. In a recorded statement given after waiving his Miranda rights, defendant maintained that he simply lost control of his mother's vehicle and accidentally rear-ended the Adams vehicle while the entire group was on the way to have dinner together.
Initially having charged defendant with four counts of attempted first degree murder, the State subsequently amended the bill of information to charge defendant with one count of attempted second degree murder, a violation of LSA-R.S. 14:30.1 and LSA-R.S. 14:27; two counts of second degree kidnapping, violations of LSA-R.S. 14:44.1; and two counts of aggravated criminal damage to property, violations of LSA-R.S. 14:55. At the close of a two-day jury trial, the jury found the defendant guilty of the responsive verdict of attempted manslaughter. The jury also found the defendant guilty as charged of two counts of second degree kidnapping and two counts of aggravated criminal damage to property.
Thereafter, the State filed a bill of information charging the defendant as a third felony offender. Following a hearing, defendant was adjudicated a third felony offender on the basis of a 1994 conviction for possession of a schedule II controlled dangerous *1237 substance and a 1998 conviction for unauthorized use of a movable. All five of his sentences were then enhanced under the Habitual Offender Law based upon his adjudication as a third felony offender.[1] Ultimately, defendant was sentenced to forty years at hard labor for attempted manslaughter; eighty years at hard labor, without benefit of probation, parole, or suspension of sentence, for each count of second degree kidnapping; and thirty years at hard labor for each count of aggravated criminal damage to property. The sentences were ordered to be served concurrently.
Defendant filed motions for post-verdict judgment of acquittal, new trial, and reconsideration of sentence. These motions were denied, and the defendant appealed.
On appeal, the court affirmed the defendant's conviction and sentences.[2]State v. Shaw, 41,233 (La.App. 2 Cir. 8/23/06), 939 So.2d 519. In addressing the legality of defendant's sentences, imposed pursuant to the Habitual Offender Law, the court of appeal acknowledged that our decision in State ex rel. Porter v. Butler, supra, prohibits the habitual offender enhancement of more than one conviction obtained on the same date arising out of a single criminal episode, and thus potentially precludes the enhancement of all but one of defendant's current sentences arising out of the June 26, 2004 crime spree. Nevertheless, the court pointed out that in our recent decision in State v. Johnson, supra, we held that our previous interpretation of the 1982 version of LSA-R.S. 15:529.1 was incorrect. The court of appeal reasoned that although our decision in Johnson did not explicitly overrule Porter, it did expressly overrule State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), which approved the rationale of Porter, rendering the continued viability of Porter questionable after Johnson. Agreeing with the State's contention that Porter is "no longer good law," the court of appeal found that the district court did not err in applying third felony enhancement to all five sentences arising out of defendant's criminal conduct.
The defendant applied to this court *1238 for writs, arguing, among other errors,[3] that his adjudication as a third felony offender was improperly used to enhance the sentence on each of his convictions arising out of a single course of criminal conduct, in direct contravention of Porter. We granted writs, primarily to consider whether LSA-R.S. 15:529.1 precludes the enhancement of multiple sentences, entered on the same day, arising out of a single criminal episode, and whether Porter remains the controlling law on this issue. State v. Shaw, 06-2467 (La.5/18/07), 957 So.2d 160.

LAW AND ANALYSIS
Habitual Offender Sentencing
The Habitual Offender Law, LSA-R.S. 15:529.1, provides, in relevant part:
A. (1) Any person who, after having been convicted within this state of a felony . . . thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
. . . .
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
. . . .
B. It is hereby declared to be the intent of this Section that an offender need not have been adjudged to be a second offender in a previous prosecution in order to be charged as and adjudged to be a third offender, or that an offender has been adjudged in a prior prosecution to be a third offender in order to be convicted as a fourth offender in a prosecution for a subsequent crime. Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section.
Defendant maintains that the jurisprudence has consistently interpreted this statute as distinguishing between convictions that arise from a single criminal act or episode and those that do not, with the result that, under the statute, only one of multiple sentences imposed after a single course of criminal conduct can be enhanced. Defendant relies for this proposition on our decision in Porter which indeed holds that "policy considerations" underpinning the statute preclude habitual offender *1239 enhancement of more than one conviction obtained on the same date arising out of a single criminal act or episode. Porter, 573 So.2d at 1109. According to defendant, because his current convictions arose from a single course of criminal conduct, the district court erred in using his adjudication as a third felony offender to enhance the sentences on each of his current convictions. Defendant asks that his sentences be vacated and his case remanded for re-sentencing with instructions that only one of his sentences can be enhanced under the Habitual Offender Law.
The "one day, one conviction" rule of Porter and the distinction drawn therein between convictions arising out of a single criminal act or episode and those arising out of "unrelated" criminal acts actually finds its origin in an earlier decision of this court, State v. Sherer, 411 So.2d 1050 (La. 1982). The defendant in Sherer had been convicted of two counts of negligent homicide arising out of an automobile accident in which the defendant driver of a truck crossed the center line of the highway and crashed head-on into an approaching vehicle, killing both of the vehicle's occupants. After determining that the defendant had two prior felonies, the district court sentenced the defendant as a multiple offender on each of the two counts of negligent homicide. On appeal, this court vacated the defendant's habitual offender adjudication and sentencing, finding that the district court erred in sentencing the defendant as a habitual offender on each of the two counts. In reaching this conclusion, the court relied on two previous decisions, State v. Schamburge, 344 So.2d 997 (La. 1977), and State ex rel. Jackson v. Henderson, 283 So.2d 210 (La.1973), which addressed a different aspect of the habitual offender statute: whether multiple convictions entered on the same day must be treated as a single predicate for purposes of determining one's status as a multiple offender. In Jackson, this court interpreted a 1956 amendment to the Habitual Offender Law as imposing a sequencing requirement such that:
in order for one to be considered a second offender, the second offense must have been committed after the first conviction. To be a third offender the third offense must have been committed after the conviction which caused him to be a second offender, and the fourth offender is one who commits a felony after the conviction which caused him to be a third offender.
State ex rel. Jackson v. Henderson, 283 So.2d at 212. In Schamburge, this court summarized that sequencing requirement as directing that "previous convictions entered on the same date should be treated as one for applying the multiple offender statute." Schamburge, 344 So.2d at 1002. (Emphasis added.) The court in Sherer stated the rule more broadly, citing Jackson and Schamburge as holding that "convictions on more than one count entered on the same date should be treated as one conviction for applying the habitual offender statute." The court then relied on this broader language to hold that only one of two convictions entered on the same date was eligible for enhancement under the Habitual Offender Law. Sherer, 411 So.2d at 1057.
The decision in Sherer garnered criticism almost immediately. See, State v. Lennon, 427 So.2d 860, 862 (La.1983) (Lemmon, J. concurring) ("Furthermore, the court should take this opportunity to overrule State v. Sherer, 411 So.2d 1050 (La.1982), which misinterpreted La. R.S. 15:529.1 by prohibiting the trial judge from sentencing Sherer, who had been convicted of two felonies on the same day, from being sentenced as a habitual offender on each of the two convictions."); State ex rel. Thibodeaux v. Waltzer, 444 So.2d 623 (La. *1240 1984) (Calogero, J. concurring) ("[T]he Sherer rule is questionable.") (Lemmon, J. concurring) ("[T]he Sherer decision is wrong and should be overruled."); State ex rel. Alpine v. Butler, 549 So.2d 859 (La. 1989) (Calogero, J. dissenting) ("State v. Sherer, 411 So.2d 1050 (La.1982), was wrong and should be overruled."). In Porter, this court availed itself of the opportunity to revisit Sherer.
The defendants in Porter were both convicted of multiple counts of armed robbery arising out of a single criminal episode: defendant Porter robbed three occupants of an apartment at gunpoint; defendant Nelson robbed two motorists stopped at an intersection. Both defendants were adjudicated habitual offenders and their sentences were enhanced as to each of the convictions. Relying on Sherer, the defendants argued that it was error to sentence them as habitual offenders under LSA-R.S. 15:529.1 on each conviction obtained on the same day arising from a single criminal incident.
After noting the criticism that the Sherer decision had attracted, this court acknowledged:
The "one day, one conviction" rule of State ex rel Jackson v. Henderson, supra, relied on in Sherer, provides little support for and certainly does not compel the extension of the rule made in Sherer. In Jackson the court, as a matter of statutory interpretation, held that multiple prior convictions obtained on the same date could not serve as multiple predicates for a fourth felony adjudication because the predicate felonies were not committed successively after prior convictions as required by LSA-R.S. 15:529.1(B), as amended in 1956. Thus, it was not the fact that the predicate convictions occurred the same day, per se, that precluded the use of more than one conviction as a predicate in a subsequent prosecution, it was the fact that none of the offenses were committed after a prior conviction so as to legally classify the offender a second or third offender as required by the statute. See State v. Simmons, 422 So.2d 138 (La.1982). Nothing in the statute requires the same analysis or result in dealing with enhancement of the sentences for multiple convictions obtained on the same date.

Porter, 573 So.2d at 1108-1109. (Emphasis added; footnote omitted.)
Recognizing that "there is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same day," this court ultimately ruled that Sherer, which involved convictions arising out of a single criminal act, should not be applied to limit enhancement of more than one conviction obtained on the same day arising out of separate criminal offenses committed at separate times. Porter, 573 So.2d at 1109. Nevertheless, the court found that "policy considerations" support the continued viability of Sherer in a scenario limited to its facts: multiple convictions obtained on the same date arising out of a single criminal act or episode. The court reasoned:
Severe penalty enhancement statutes must be strictly construed. The purposes of the habitual offender statute to discourage commission of successive felonies and to enhance punishment for subsequent felonies are not served by enhancing punishment for multiple offenses arising out of one incident of criminal conduct.
Porter, 573 So.2d at 1109. (Citations omitted.)
After Porter, courts have generally permitted the enhancement of multiple convictions obtained on the same date, which arise from separate criminal offenses committed at separate times, while continuing *1241 to prohibit the enhancement of multiple convictions arising out of a single criminal episode.[4] The basis of this rule, however, has remained wholly jurisprudential, founded on the "policy considerations" noted in Porter, notwithstanding the acknowledged lack of support for the rule in the statutory language.
With the passage of Act 688 of 1982, the legislature effected a major change in the Habitual Offender Law. In State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), this court was asked to determine the effect of that legislative action on the sequential requirement for computing offender status that had been recognized in State ex rel. Jackson v. Henderson, supra, and summarized as the "one day, one conviction" rule for purposes of imposing enhanced penalties under the Habitual Offender Law. Finding no clear indication of the legislative intent with respect to the amendment, this court ultimately drew upon principles of strict statutory construction and the doctrine of lenity to hold that the sequencing requirement, and the "one day, one conviction" rule, survived the 1982 amendment. Mims, 601 So.2d at 650.
Mims remained the controlling law until this court's recent decision in State v. Johnson, supra, in which this court re-examined its conclusions in Mims after uncovering legislative materials not available at the time Mims was decided. Finding that the analysis in Mims was "ultimately flawed and deviated from well-established rules of statutory interpretation," we returned to the clear and unambiguous language of the statute to conclude that our original interpretation of the effect of Act 688 of 1982 on the sequencing requirement of LSA-R.S. 15:529.1 was erroneous. Johnson, 03-2993 at 12, 884 So.2d at 575. We held:
[T]he habitual offender statute, LSA-R.S. 15:529.1, as it appears post-amendment, is clear and unambiguous. There is no statutory bar to applying the law in sentencing for more than one conviction obtained on the same date based on unrelated conduct. The statute simply does not contain a sequential conviction requirement. Rather, the only requirement in the statute is one which has been imposed from the inception: for sentence enhancement purposes, the subsequent felony must be committed after the predicate conviction or convictions.
Johnson, 03-2993 at 17-18, 884 So.2d at 578. Concluding that the passage of Act 688 of 1982 legislatively repudiated the "one day, one conviction" rule of State ex rel. Jackson v. Henderson, supra, we expressly overruled our contrary conclusion in Mims.
Johnson is a decision purely about computing offender status under LSA-R.S. 15:529.1. It does not address the issue framed in Porter and presented again here: whether all multiple convictions obtained on the same day arising out of a single criminal episode may be enhanced under the Habitual Offender Law.[5] Nevertheless, *1242 as the court of appeal recognized in affirming the defendant's sentences in this case, "[w]hile State v. Johnson did not explicitly overrule State ex rel. Porter, supra, it did overrule State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), which approved the rationale of State ex rel. Porter." Shaw, 41,233 at 10, 939 So.2d at 525.
Given our repudiation of the Mims "one day, one conviction" rule in the context of computing predicate offenses for purposes of determining habitual offender status, we find it appropriate to re-examine Porter and the "policy considerations" that prompted the adoption of the "one day, one conviction" rule in the context of enhancing sentences on multiple convictions obtained on the same date.
As we did in Johnson, we begin our analysis with the proposition that the starting point in the interpretation of any statute is the language of the statute itself. Johnson, 03-2993 at 11, 884 So.2d at 575; Theriot v. Midland Risk Insurance Company, 95-2895 (La.5/20/97), 694 So.2d 184, 186; Touchard v. Williams, 617 So.2d 885, 888 (La.1993). Our interpretation of the language of a criminal statute is governed by the rule that the articles of the criminal code "cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." LSA-R.S. 14:3; State v. Skipper, 04-2137, p. 3 (La.6/29/05), 906 So.2d 399, 403. Further, although criminal statutes are subject to strict construction under the rule of lenity, State v. Carr, 99-2209, p. 4 (La.5/26/00), 761 So.2d 1271, 1274, the rule is not to be applied with "such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute." State v. Everett, 00-2998, p. 12 (La.5/14/02), 816 So.2d 1272, 1279, quoting State v. Broussard, 213 La. 338, 342, 34 So.2d 883, 884 (La.1948). See State v. Brown, 03-2788, pp. 5-6 (La.7/6/04), 879 So.2d 1270, 1280, quoting Perrin v. United States, 444 U.S. 37, 49 n. 13, 100 S.Ct. 311, 317, 62 L.Ed.2d 199 (1979) ("The general rule that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity applies when the court is uncertain about the statute's meaning and is `not to be used in complete disregard of the purpose of the legislature.'"). Consequently, a criminal statute, like all other statutes, should be interpreted so as to be in harmony with and to preserve and effectuate the manifest intent of the legislature; an interpretation should be avoided which would operate to defeat the object and purpose of the statute. Brown, 03-2788 at 6, 879 So.2d at 1280; Broussard, 34 So.2d at 884. What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. State v. Williams, 00-1725, p. 13 (La.11/28/01), 800 So.2d 790, 800. Therefore, where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit. LSA-R.S. 1:4; State v. Freeman, 411 So.2d 1068, 1073 (La.1982).
With these precepts in mind, we turn to an examination of the Habitual Offender Statute, LSA-R.S. 15:529.1, which provides, in relevant part:
A. (1) Any person who, after having been convicted within this state of a felony . . . thereafter commits any subsequent *1243 felony within this state, upon conviction of said felony, shall be punished as follows[.] [Emphasis added.]
This language is simple and straightforward. The Porter court scrutinized it and acknowledged that "there is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same date." Porter, 573 So.2d at 1109. Accordingly, the court held that where an offender with a prior felony conviction subsequently commits multiple separate felonies at separate times and is thereafter convicted of the subsequent felonies, he is subject to being adjudicated a habitual offender as to each conviction, regardless of whether the convictions are entered on the same date. Id. Nevertheless, the court refused to extend its holding to multiple convictions arising out of a single criminal act, finding such a refusal justified by "policy considerations" outside the plain language of the statute. Id. In reaching this conclusion, the Porter court deviated from well-settled rules of statutory construction.
First, the court failed to give effect to the clear and unambiguous language of the statute. The statute is plain and straightforward. It reflects a legislative intent to expose a person who has previously been convicted of a felony to imposition of habitual offender penalties for any felony committed after the date of the prior felony conviction.[6] There is no support in the statute's language for the rule, superimposed upon the statute by the courts, limiting its application to only one of multiple felonies committed on the same day arising out of a single course of criminal conduct. The statute and the enhanced penalties provided for therein are triggered by the subsequent commission of "any felony." In maintaining the "one day, one conviction" rule in the context of a "single criminal act or episode," the Porter court ignored the plain language of the statute in favor of perceived "policy considerations." In so doing, the court failed to adhere to the admonition that where the words of a law are clear and unambiguous, they are not to be disregarded under the pretext of pursuing their spirit. LSA-R.S. 1:4; State v. Freeman, 411 So.2d at 1073.
Second, the court failed to construe the statute in a manner consistent with its object and purpose. As the Porter court correctly noted, the purpose of the Habitual Offender Law, is "to discourage commission of successive felonies and to enhance punishment for subsequent felonies." Porter, 573 So.2d at 1109. However, the Porter court's reasoning that the purpose of the statute is not served by enhancing punishment for multiple offenses arising out of one incident of criminal conduct has no basis in the statutory language.
As we have explained, the habitual offender statute was enacted "as a deterrent and a warning to first offenders and as a protection to society by removing the habitual offender from its midst." State v. George, 218 La. 18, 26, 48 So.2d 265, 267 (La.1950). The habitual offender statute does not create a separate offense or punish an individual for past crimes; rather, the statute increases punishment on the basis of an individual's status as a repeat offender. The goal is to deter and punish recidivism by punishing more harshly those who commit the most crimes. State v. Johnson, 97-1906, p. 8 (La.3/4/98), 709 So.2d 672, 677. ("Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of *1244 his continuing disregard for the laws of our state. He is subjected to a long sentence because he continues to break the law."). Contrary to the conclusion of the Porter court, this goal is not served when a defendant commits multiple felonies in a continuous episode of criminal activity but is punished more severely for only one of those felonies. The purpose of the statute, to dissuade first offenders from committing subsequent felonies and to punish more harshly those who commit the most crimes, is served only when the repeat offender is subject to sentence enhancement for each subsequent felony. Enhancing the sentence on only one of multiple convictions arising out of a single criminal episode actually thwarts the goal of protecting society by removing the most egregious offenders from its midst. The single enhancement produces the incongruous and illogical consequence of removing any incentive the statute might otherwise impose on a recidivist to cease criminal activity once begun, a result directly at odds with the purpose of the statute. We cannot endorse an interpretation of the statute that would attribute this consequence to the legislation. Savoie v. Rubin, 01-3275, p. 4 (La.6/21/02), 820 So.2d 486, 488 ("The function of the court is to interpret the laws so as to give them the meaning which the lawmakers obviously intended them to have and not to construe them so as to give them absurd or ridiculous meanings."). Contrary to the conclusion of the Porter court, we find that it is unnecessary to superimpose upon the habitual offender statute a limitation permitting enhancement of only one of multiple sentences entered on the same date arising out of a single criminal episode.[7]
In summary, we find that the Porter court strayed too far from the language and intent of LSA-R.S. 15:529.1 by engrafting upon the statute the "one day, one conviction" rule in the context of multiple sentences arising out of a single criminal episode. The statute, by its plain terms, subjects "any subsequent felony" to enhanced penalties. Had the legislature intended to limit enhancement where multiple convictions result from offenses arising out of the same criminal act or transaction, it could have done so by including the appropriate language, as it did in enacting LSA-C.Cr.P. 883, which mandates the imposition of concurrent sentences where a defendant is convicted of "two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan" unless the court expressly directs otherwise. The legislature did not do so, opting simply for enhancement of "any subsequent felony."
Ultimately, the Porter decision to leave intact the one day, one conviction rule of Sherer with respect to multiple convictions arising out of a single criminal episode was based entirely on "policy considerations" founded in the rule of lenity. However, it is unnecessary to resort to the previously mentioned rule of lenity where, as here, there is no ambiguity in the statute or the intent of the legislature.
Further, we note the legislature enacted 2005 La. Acts 218, amending LSA-R.S. 15:529.1(B) to provide that "[m]ultiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one *1245 conviction for the purpose of this Section." This amendment, which adopts Johnson's repudiation of the "one day, one conviction" rule in the computation of predicate offenses for purposes of determining habitual offender status, but accords the decision only prospective effect, reflects a legislative endorsement of this court's interpretation of the Habitual Offender Law and its return to the plain language of the statute. The amendment evidences a legislative repudiation of the "one day, one conviction" rule and a determination that convictions (such as defendant's) obtained after October 19, 2004, should be counted individually for purposes of sentence enhancement.
By departing from the language of LSA-R.S. 15:529.1, and superimposing on the statute a rule permitting enhancement of only one of multiple sentences entered on the same date arising out of a single criminal episode or act, the Porter court needlessly interjected confusion and uncertainty into an already difficult area of the law. Porter limited enhancement when multiple sentences arise from a "single criminal act or episode," but offers no definition of "criminal episode," leaving it to the lower courts to attempt to determine, on a case by case basis, the parameters of an "episode." Finding that the Porter court erroneously elevated "policy considerations" over the words of the statute, today we return the statute to its simpler form, unadulterated by Porter's jurisprudential gloss on the plain language.
We therefore hold that the language of LSA-R.S. 15:529.1 contains no prohibition against enhancing multiple sentences obtained on the same date arising out of a single criminal act or episode. Unlike the Porter court, we find no legislative purpose or policy that is contradicted by failing to read such a prohibition into the statute's language. Nor does a plain reading of the statute generate absurd or unjust results. In clear and unambiguous terms, the statute exposes a person who has previously been convicted of a felony to enhanced penalties for any felony committed after the date of the prior felony conviction. There is no statutory bar to applying the habitual offender law in sentencing for more than one conviction obtained on the same date, whether the convictions result from separate felonies committed at separate times or arise out of a single criminal act or episode. To the extent that the opinions in Porter and Sherer are inconsistent with this conclusion, they are overruled.
As a result of the foregoing analysis, we find that the trial court did not err in enhancing all five of defendant's sentences based upon his adjudication as a third felony offender.
Right to Testify
In his only other assignment of error to this court, defendant complains that the trial court improperly interjected itself into the defendant's decision to waive his right to testify in his own defense when the court asked the defendant, outside the presence of the jury, whether he wished to testify. Defendant asserts that the trial court's inquiry deprived him of a fundamentally fair trial by inducing his decision not to take the stand.
After the State called its last witness, the trial court excused the jury to resolve an objection to certain documentary evidence. The following colloquy ensued:
THE COURT: For the record the jury is outside the courtroom. I think Mr. Hall is about ready to rest. Ms. Harried, I need toso I don't have to run the jury back outside the courtroom, I need to know whether or not your client intends to take the witness stand. And if not, I need his statement *1246 for the record as to the fact that he chooses not to testify.
MS. HARRIED: Your Honor, I have had an opportunity to speak with Mr. Shaw. I have told him that it is my advice that he not take the stand. I have explained what dangers he faces if he takes the stand. I've explained to him that his entire criminal history would come out in front of the jury. In fact, I would have to ask him prior to Mr. Hall cross-examining him so that it did not look like we were hiding anything from the jury.
I explained to him the dangers that he would face on cross-examination and how I thought that that may impact the jury. He agreed with my assessment, and he agreed that he did not wish to testify.
THE COURT: Mr. Shaw, is that correct?
MR. SHAW: Yes, sir.
THE COURT: Your lawyer has explained the advantages and disadvantages of testifying verus[versus] not testifying. And my understanding is that your choice is that you not testify.
MR. SHAW: Yes, sir.
An accused's right to testify is a fundamental right of constitutional dimension. Rock v. Arkansas, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 2710, 97 L.Ed.2d 37 (1987); State v. Hampton, 00-0522, pp. 4-5 (La.3/22/02), 818 So.2d 720, 723-724. Because the right is personal, it may be relinquished only by the defendant, and the defendant's relinquishment of the right must be knowing and intentional. Hampton, 00-0522 at 7, 818 So.2d at 725.
In Hampton, this court established a framework for determining whether a defendant's right to testify was violated or waived by his silence during trial. In doing so, a plurality commented in dicta that absent extraordinary circumstances that should alert the trial court to a conflict between attorney and client, the court should not inquire into a criminal defendant's right to testify; rather, the court should assume that a criminal defendant, by not attempting to take the stand, has knowingly and voluntarily waived his right. Hampton, 00-0522 at 14, 818 So.2d at 729, quoting Passos-Paternina v. United States, 12 F.Supp.2d 231 (D.P.R.1998).
It is firmly established that a trial judge may not actively interject himself into the defendant's decision, aided by input from his attorney, whether to testify in his own defense because judicial interference with this strategic decision poses a danger that the judge will appear to encourage defendant to invoke or waive this right. United States v. Joelson, 7 F.3d 174, 178 (9th Cir.1993). For this reason, the federal courts subscribe to the rule that a trial court has no duty to advise the defendant of his right to testify, or to ensure that an on-the-record waiver occurs. Joelson, 7 F.3d at 177. However, the absence of a duty in this regard clearly does not mean that a court does not have the discretion to conduct an on-the-record waiver outside the presence of the jury, so long as the court does not interject itself into the strategic decision made by the defendant with advice from his counsel.
Nevertheless, defendant argues that in the absence of any indication of a disagreement between counsel and defendant, the trial court erred in conducting this inquiry into his decision to waive his right to testify in his own defense, and, further, that this inquiry was presumptively prejudicial, requiring the reversal of his conviction. The defendant additionally argues the trial court's timing of its inquiry, shortly before the State rested its case, also inappropriately *1247 affected his decision to forego testifying, compounding the error.
We disagree. A review of the exchange between defendant and the trial court reveals no evidence of improper influence. The inquiry was an entirely neutral one in which the court neither urged nor prevented the defendant's testimony. Although the court's inquiry came after the State called its last witness but before it formally rested, there is no indication that the timing of the inquiry impacted the defendant's decision to waive his right to testify.[8] That waiver appears on the record in unequivocal terms. In response to a benign inquiry from the trial court, devoid of any indicia of coerciveness, the defendant unhesitatingly waived his right to testify and further indicated that he discussed his waiver with his attorney.
Under these circumstances, there is simply no evidence from which this court could conclude that the defendant's right to testify in his own defense was violated or that the trial court impermissibly discouraged the defendant from testifying. This assignment of error is without merit.

CONCLUSION
After examining the language of LSA-R.S. 15:529.1 and reviewing the jurisprudence interpreting same, we find that the lower courts correctly concluded that all multiple sentences imposed after a single criminal act or episode can be enhanced under the Habitual Offender Law. To the extent that the opinions of this court in State v. Sherer, supra, and State ex rel. Porter v. Butler, supra, are inconsistent with this conclusion, they are expressly overruled.[9] Finding no merit in the only other assignment of error raised by defendant, the alleged abridgement of his right to testify in his own defense, we affirm the defendant's conviction, the adjudication as a third felony offender, and the sentences.
AFFIRMED.
CALOGERO, C.J., concurs and assigns reasons.
JOHNSON, J., dissents.
CALOGERO, Chief Justice, concurring.
I respectfully concur in the majority's decision to overrule State v. Sherer, 411 So.2d 1050 (La.1982), which had been reaffirmed in State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991).
As the majority opinion points out, I have previously stated my view that Sherer was a misapplication of the "sequencing requirement" for enhanced penalties in the sentencing of repeat offenders, a rule of law recognized in State ex rel. Jackson v. Henderson, 283 So.2d 210 (La.1973).[1]See State ex rel. Thibodeaux v. Waltzer, 444 *1248 So.2d 623 (La.1984), Calogero, J., concurring; State ex rel. Alpine v. Butler, 549 So.2d 859 (La.1989), Calogero, J., dissenting. In the context of multiple prior convictions entered on the same date, the "sequencing requirement" has been summarized as the principle that "previous convictions entered on the same date should be treated as one for applying the multiple offender statute." State v. Schamburge, 344 So.2d 997, 1002 (La.1977)(emphasis supplied). However, the word "previous" was subsequently omitted, and the principle came to be stated more broadly as "convictions on more than one count entered on the same date should be treated as one conviction for applying the multiple offender statute." State v. Sherer, 411 So.2d 1050, 1057 (La. 1982). In Sherer, wherein two homicide convictions arose out of the same criminal act, this broader language was invoked to hold that only one of the two convictions entered on the same day would be eligible for enhancement under the habitual offender law. Id. Although the court in Porter reaffirmed the rule announced in Sherer, I believe that Sherer was an unnecessary and erroneous application of the "sequencing requirement" set forth in the habitual offender statute. Therefore, I concur in the majority's decision today overruling Sherer and Porter.
Notwithstanding my opinion of the wrongness of Sherer, I continue to adhere to my view that the majority opinion in State v. Johnson, 03-2993 (La.10/19/04), 884 So.2d 568, cited by the majority today as the basis for revisiting Sherer, erred in holding that Act 688 of 1982 amending La.Rev.Stat. 15:529.1 removed the statute's "sequencing requirement" and that this amendment legislatively repudiated the rule of law recognized in Jackson. For the reasons stated in my dissent thereto, I believe the Johnson court erred in overruling State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), and thereby doing away with the "sequencing requirement" present in our habitual offender law since 1928. Johnson, 03-2993, 884 So.2d at 579-82, Calogero, C.J., dissenting.
Because I disagree with much of the majority's reasoning today, including its reliance on Johnson, which I believe wrongfully interpreted the 1982 amendment to the habitual offender law and erroneously overruled Mims, I concur, for the reasons set forth above, only in the result the majority reaches today, i.e., overruling Sherer and affirming the defendant's convictions and the enhanced sentences as imposed.
NOTES
[1] In imposing sentence, the trial court stated:

The facts of what happened June 26, 2004, are severe. There were significant personal injuries sustained by Ms. Jessie Jeter Williams, the defendant's mother, and Miss Karen Harris, who was at that time the defendant's girlfriend. There was extensive property damage committed to a Lincoln Town Car owned by Ms. Jeter Williams, and there was extensive property damage done to the Nissan Altima owned by Danielle Adams.
Specifically, both ladies were hospitalized. . . . .
. . . .
It is unclear exactly the number of times [defendant has] been arrested, but it appears to be at least 20 times from my count, possibly up to 25 times, all within a very relatively short period of time.
. . . .
I want the Court of Appeal to understand the following three things regarding this sentence: I believe that all the convictions, all five of them, are subject to enhancement in accordance with the habitual offender law; number two, I believe that the maximum penalty should be ordered on all five felony convictions; number three, I believe, however, because I intend to impose the maximum possible penalty that these sentences should run concurrently, that is together.
[2] The court of appeal also reviewed the record for errors patent, and found that defendant's sentences for attempted manslaughter and two counts of aggravated criminal damage to property were illegally lenient because defendant was not denied benefit of probation, parole, or suspension of sentence in connection with these sentences. However, the court pointed out that this error patent would be automatically corrected by operation of LSA-R.S. 15:301.1.
[3] In his writ application to this court, defendant additionally asserted that the evidence adduced at trial was insufficient to support his conviction for each offense, that his right to testify in his own behalf was improperly abridged by the district court, that the district court failed to specify the predicate offenses that were used to enhance his sentences, and that his commitment order was erroneous. In his brief to this court following the grant of writs, defendant failed to raise, brief, or argue any assignments of error other than those addressing the recidivist enhancement of each of his convictions in contravention of Porter, and the alleged abridgement of his right to testify. Accordingly, the remaining assignments of error originally asserted by defendant are deemed abandoned. See, State v. Williams, 366 So.2d 1365, 1366 (La.1978) ("As counsel failed to brief or argue the remaining five assignments of error, we deem them abandoned.").
[4] Compare, e.g., State v. Ward, 94-0490, pp. 13-14 (La.App. 4 Cir. 2/29/96), 670 So.2d 562, 568-569, writ denied, 97-0642 (La.9/19/97), 701 So.2d 165 (Defendant's multiple convictions which arose out of three separate and distinct criminal episodes on different dates and against three different victims could all be enhanced even though the convictions were obtained on the same date.); with State v. Francis, 97-0201, pp. 10-11 (La.App. 1 Cir. 2/20/98), 709 So.2d 834, 840-841, writ denied, 98-1054 (La.5/8/98), 719 So.2d 57 (finding error in the enhancement of more than one of three convictions that arose out of one criminal episode).
[5] Although the defendant in Johnson was convicted of both second degree battery and purse snatching, only his sentence for purse snatching was enhanced. Johnson, 03-2993 at 8, 884 So.2d at 573.
[6] The use of the singular does not indicate an intent to prohibit use of the Habitual Offender Law to enhance multiple sentences. In the Revised Statutes, "[w]ords used in the singular number include the plural and the plural includes the singular." LSA-R.S. 1:7.
[7] As we noted in Johnson, an accused becomes a recidivist at the time he commits a subsequent crime, whether or not he has previously been exposed to sentencing as a multiple offender. Johnson, 03-2993 at 18, 884 So.2d at 579. Under this rationale, there is no logical basis for holding that an offender can be considered a recidivist for purposes of one sentence among several, but not all. A recidivist does not cease to be one because he was convicted of multiple offenses.
[8] In fact, the record is devoid of a contemporaneous objection to the trial court's questions, indicating that, at the time it occurred, the inquiry was not deemed by either defendant or his counsel to be improper or coercive.
[9] Our holding in this regard, correcting erroneous statutory construction, applies retroactively to all non-final convictions. State v. Ruiz, 06-1755, p. 5 (La.4/11/07), 955 So.2d 81, 85.
[1] This court in Jackson stated:

The plain meaning of the statute as it now stands requires that in order for one to be considered a second offender, the second offense must have been committed after the first conviction. To be a third offender the third offense must have been committed after the conviction which caused him to be a second offender, and the fourth offender is one who commits a felony after the conviction which caused him to be a third offender.
Jackson, 283 So.2d at 212 (citations omitted). See also State v. Simmons, 422 So.2d 138 (La.1982).