Judgment rendered March 4, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,321-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

JOSEPH M. BRYANT                      Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 327055

Honorable Brady D. O'Callaghan, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Holli Ann Herrle-Castillo

JOSEPH BRYANT                        Pro Se

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

RICHARD S. FEINBERG
KODIE K. SMITH
Assistant District Attorneys

* * * * *

Before WILLIAMS, STEPHENS, and McCALLUM, JJ.

**McCALLUM, J.**

Adjudicated a second-felony habitual offender after being convicted of armed robbery and attempted aggravated rape, Joseph Bryant appeals his habitual offender sentences, contending that they are unconstitutionally excessive. Concluding that the sentences are justified and that the trial judge did not abuse his discretion when imposing the sentences, we affirm them.

## FACTS

The details of Bryant's current offenses were set forth in a prior appeal in this matter:

> On the morning of August 22, 2014, the victim, SS, was home alone watching television when her doorbell rang. SS looked through the peephole, and observed a tall, dark-skinned black male, wearing a baseball cap, holding a business card. The man, later identified as the defendant, Joseph M. Bryant, indicated that he worked for a tree service and inquired if SS desired service at her home. SS declined, but cracked the door open just enough to take the business card from Bryant. As she opened the door, Bryant put his foot in the threshold of the door. SS noted the perpetrator was much larger than she. Bryant asked SS if her husband was home. When she said no, Bryant forced his way into SS's home.
>
> Once inside the home, SS observed Bryant holding a pocketknife. Bryant ordered SS not to scream and told her, "I am going to rape you and kill you," a threat he repeatedly made during the assault. SS and Bryant walked from the entryway of her home, through the dining room, into the kitchen, and eventually ended up in the den. While in the den, Bryant threw SS onto the sofa and again informed her that he was going to rape her. While still armed with the pocketknife, Bryant then straddled SS, throwing both of his legs on the outside of both of SS's legs and untied her robe. SS was wearing only a robe, nightshirt, and underwear. After untying SS's robe, Bryant lifted up SS's nightshirt and touched her vagina on top of her underwear. Throughout the incident, SS continually pleaded for her life and Bryant repeatedly told SS that he planned to rape and kill her. While pleading for her life, SS offered Bryant her vehicle, money, and jewelry. Bryant became interested in the money and got off SS, at which point she wrapped her robe around herself. Bryant followed her to the master bedroom to retrieve her purse. The two went back into the den, where Bryant took $120 cash from SS. Somehow, with his knife still

drawn, the two ended back up in the bedroom. For a second time, Bryant threw SS onto the bed and told her he would rape her. Bryant, again, untied SS's robe and straddled her - she could not move. SS made every effort to protect herself as she was being attacked.

Suddenly, Bryant stopped, sat up on the bed, and instructed SS to fix her robe. He then began to tell SS that she was a nice person and told her that his daughter had recently been killed. Bryant became emotional and began to weep. At that point, Bryant got off the bed and the two went into the sunroom, through the den, into the entryway, and arrived at SS's front door. Bryant asked for a hug, SS relented, and Bryant exited the home. Having learned SS's first name at some point during the incident, Bryant called out to her from the other side of the door using her name. Bryant asked to reenter the home, and SS refused. Bryant then asked if SS intended to call the police and requested reentry a second time. Again, SS refused and eventually Bryant left. Afraid to call the police, SS called her husband, who then called police.

Later, Bryant was apprehended in connection with other incidents and arrested. When SS was shown a six-person photographic lineup, she identified Bryant as the man who entered her home on the morning of August 22, 2014. SS additionally made an in-court identification of Bryant at his trial.

*State v. Bryant*, 52,743, pp. 1-3 (La. App. 2 Cir. 6/26/19), 277 So. 3d 874,

876-7, *writ denied*, 19-01320 (La. 10/08/19), 280 So. 3d 171.

Bryant was charged by bill of information with attempted aggravated

rape (La. R.S. 14:42 and 14:27)[1] and armed robbery (La. R.S. 14:64).

Bryant's mental status became an issue leading up to trial. On September

14, 2015, the trial judge ordered Bryant's commitment upon finding that he

lacked the mental capacity to understand the proceedings against him or to

assist in his defense. The Eastern Louisiana Mental Health System Forensic

Division ("state hospital") discharged Bryant in March of 2016 on the basis

that he had the mental capacity to proceed. Following a hearing on May 31,

---

[1] Aggravated rape is now designated as first degree rape. La. R.S. 14:42.

2

2016, the trial judge determined that Bryant had not regained competency and ordered his return to the state hospital.

Another sanity hearing was held on January 10, 2017, during which the trial judge heard testimony from treating providers that Bryant presented one affect when he was being evaluated and a different affect at other times. The providers also asserted that Bryant was competent to stand trial. The trial judge ruled that Bryant had been restored to competency.

On November 8, 2017, Bryant was convicted as charged of armed robbery and attempted aggravated rape. Bryant filed a motion for new trial as well as a motion for post-verdict judgment of acquittal. Both motions were denied.

On December 13, 2017, the State filed a habitual offender bill against Bryant charging him as a third-felony habitual offender. Bryant had been convicted of the two predicate felonies, robbery and sexual assault, in Dallas County, Texas, on October 31, 1994. He had received a sentence of 10 years for the sexual assault, and a sentence of 20 years for the robbery. The predicate felonies had been committed on different dates. The robbery occurred on June 19, 1992, while the sexual assault occurred on April 9, 1994. According to testimony at that habitual offender proceeding, records from Texas indicated that Bryant's departure date from the Texas Department of Corrections was February 7, 2014.

On January 4, 2018, Bryant was adjudicated a third-felony habitual offender and sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence. The trial judge concluded that the mandatory sentence of life without parole, probation, or suspension, as dictated by La. R.S. 15:529.1(A)(3)(b), was appropriate considering not only

the violent nature of the current offenses, but also the brief time between Bryant's release from incarceration and the commission of the current offenses.

A motion to reconsider sentence was filed on January 18, 2018. Bryant's counsel contended that Bryant was 18 years old when previously convicted and that he suffered from mental health issues.[2] The court denied the motion.

Bryant appealed his convictions and sentence. The first assignment of error asserted that the trial court erred in finding Bryant competent to proceed to trial. In the second assignment of error, Bryant's counsel argued that the trial court erred in adjudicating Bryant a third-felony offender. This Court found no merit to the first assignment of error and affirmed Bryant's convictions. However, this Court vacated Bryant's habitual offender adjudication and remanded for resentencing. Pursuant to La. R.S. 15:529.1(B) and *State v. Shaw*, 06-2467 (La. 11/27/07), 969 So. 2d 1233, the predicate convictions were to be counted as one conviction because they were obtained on the same date and prior to October 19, 2004. *State v. Bryant*, *supra*.

Upon remand, Bryant was adjudicated a second-felony habitual offender on July 24, 2019, and sentenced on each count to 65 years at hard labor without benefit of probation, parole, or suspension of sentence. The sentences were to be served concurrently. Defense counsel objected to the sentences. The trial judge noted the objection and stated that the sentences were actually lower than the midrange sentences requested by the defense.

---

[2] A presentence investigation report prepared on December 27, 2017, reflected that Bryant's birthdate was February 24, 1975.

Bryant was advised by the trial judge that he had 30 days to appeal his sentences and 2 years to seek post-conviction relief.

Bryant filed a motion to reconsider sentence on July 26, 2019. He asked the court to reconsider the sentences imposed because of his young age at the time of the predicate offenses and because he suffered from mental health issues. The trial judge denied the motion, noting in a written ruling that he had carefully considered the aggravating and mitigating circumstances and concluded that the sentences were appropriate. The trial judge added that after reviewing the motion and the reasons stated in court, his opinion remained that the sentences were reasonable. Bryant has appealed his sentences.

## DISCUSSION

Bryant's sole assignment of error on appeal is that his sentences are unjustified and unconstitutionally excessive. He maintains that the trial judge did not properly consider the long history or magnitude of his mental illness and the effect it had on his behavior. In support of this argument, Bryant's appellate counsel refers to a competency evaluation report as well as testimony given by physicians at the competency hearings.

A competency evaluation was conducted by Dr. George Seiden on July 17, 2015. During the evaluation, Bryant informed Dr. Seiden that he heard voices that told him to do bad things. Dr. Seiden also noted that Bryant appeared to be responding to voices during the evaluation. Bryant reported having hallucinations, including some where he ate bloody bodies. Bryant also told Dr. Seiden that he had attempted suicide several times. Dr. Seiden's diagnosis was schizophrenia.

5

Drs. Marc Colon and Ashleigh Fleming examined Bryant on August 25, 2015. Bryant told them about a history of psychiatric treatment dating back to when he first saw a psychiatrist at the age of 9 or 10 after he set his stepfather's bed afire. He also reported delusions of control and paranoia, as well as hallucinations.

Bryant was ordered committed on September 14, 2015. However, he was discharged from the state hospital and sent back to the Caddo Correctional Center ("CCC") in March of 2016.

Dr. Dennis Kelly, a staff psychiatrist at the state hospital, testified at an April 27, 2016, hearing that Bryant had been diagnosed with schizoaffective disorder of a bipolar type and post-traumatic stress disorder. Dr. Kelly also testified that Bryant had been subjected to an aggressive treatment regimen at the state hospital. Bryant continued to report hallucinations and suicidal thoughts. Dr. Kelly agreed that Bryant had a significant history of mental illness.

Dr. Colon, who treated Bryant at CCC, testified at a hearing conducted on May 31, 2016. Dr. Colon stated that Bryant had been withdrawn and psychotic since his return to CCC. Bryant also refused to accept medical and psychiatric treatment there. Bryant, who had attempted suicide by overdose twice, was placed on suicide watch. Bryant had also complained of hallucinations, and in one instance, had punched a wall. Dr. Colon did not think that Bryant was malingering in order to avoid going to trial, but thought that his condition was related to chronic mental illness. Dr. Colon recommended a specific medication and electroconvulsive therapy if Bryant returned to the state hospital.

Drs. Laura Brown and John Roberts testified at a sanity hearing on January 10, 2017. Dr. Brown, accepted as an expert in the field of forensic psychiatry, had assessed Bryant at the state hospital. She thought Bryant probably suffered from a depressive type of mental illness, and possibly a personality disorder.

Dr. Roberts, who was accepted as an expert in the field of psychiatry, treated Bryant when he was at the state hospital in 2016. He testified that Bryant had been diagnosed with a depressive disorder and an unspecified personality disorder, and he possibly had some psychosis as well. Bryant also reported hearing voices with command hallucinations. Dr. Roberts acknowledged that Bryant's records showed that he had a long psychiatric history. Bryant had been prescribed medicines for mood stabilization and for the treatment of psychosis.

While Dr. Roberts was testifying about one of Bryant's suicide attempts, Bryant disrupted the proceedings by shouting, "Liar, liar, liar, liar." Dr. Roberts thought the outburst could be indicative of mental illness or possibly frustration over his situation. At the conclusion of the hearing, the trial judge described Bryant's conduct in court for the record. Bryant, who was handcuffed to a wheelchair, had leapt forward and tried to leave the courtroom through the inmate entrance while dragging the wheelchair behind him.

Bryant's appellate counsel also refers to a mental health evaluation report in the Texas Department of Corrections records which showed that Bryant had been diagnosed with impulse control, kleptomania, pyromania, and intermittent explosive disorder. Finally, counsel asserts that Bryant's

actions during the current offenses were bizarre and indicative of someone with mental health issues.

The State argues in opposition that Bryant was found competent to stand trial following numerous competency hearings during which his mental health issues were thoroughly discussed and several doctors testified that Bryant was a malingerer. The State notes that Bryant's convictions are of the same nature as his two prior felony convictions, and that the concurrent 65-year sentences are well within the applicable ranges and are not the maximum sentences available. The State points out that because the trial judge observed Bryant during his multiple competency hearings, at trial, and at sentencing, he was in the best position to consider Bryant's age and mental health issues and weigh those factors against the trauma that Bryant caused the victim and his prior convictions of the same nature. The State maintains that the trial judge did not abuse his discretion and that the sentences imposed are not constitutionally excessive.

A reviewing court imposes a two-prong test to determine whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence. La. C. Cr. P. art. 894.1(C). The articulation of the factual basis for the sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows

8

an adequate factual basis for the sentence, resentencing is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. *State v. Fontenot*, 49,835 (La. App. 2 Cir. 5/27/15), 166 So. 3d 1215.

The defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation are important elements to consider. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Boehm*, *supra*. There is no requirement that specific matters be given any particular weight at sentencing. *State v. Boehm*, *supra*.

Second, a sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a sentence will not be set aside as excessive. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Boehm*, *supra*.

At resentencing, the trial judge reviewed the applicable sentencing ranges for both convictions under the habitual offender law as written at the time the instant offenses were committed on August 22, 2014. For attempted aggravated rape, the sentencing range was 10 to 50 years at hard labor, without benefit of probation, parole, or suspension of sentence. La.

9

R.S. 14:42; 14:27. As a second-felony habitual offender under La. R.S. 15:529.1(A)(2)(a), Bryant faced a potential sentence of two-thirds to three times the longest sentence, or 33 to 150 years, because he had a prior conviction for sexual assault.

For armed robbery, the sentencing range was 10 to 99 years at hard labor, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64. Under La. R.S. 15:529.1(A)(1), Bryant faced a potential sentence of one-half the longest sentence to two times the longest sentence, or 49.5 to 198 years.

At resentencing, the trial judge stated that he had previously considered all of the relevant factors under La. C. Cr. P. art. 894.1. In particular, he considered Bryant's criminal history and mental health issues, which the trial judge was familiar with from having considered Bryant's competency to stand trial. The trial judge noted that Bryant had a prior conviction for sexual assault of a minor and now had a conviction for sexual assault of an adult, and that his prior conviction for robbery had elevated to a new conviction for armed robbery. The trial judge found that the similarity and nature of the instant offenses as compared to the prior offenses indicated that a serious sentence was both appropriate and necessary. The trial judge also remarked that while Bryant's mental health problems were a mitigating factor, that factor was grossly outweighed by the trauma to the victim and Bryant's criminal history.

The sentences imposed were particularized to Bryant. Despite having already served considerable time for two similar crimes, Bryant engaged in serious criminal activity not long after being released in Texas. The fact and severity of Bryant's ongoing mental health issues were thoroughly addressed

in the competency hearings. Moreover, those mental health issues were clearly considered by the trial judge when fashioning a punishment that was well below half the maximum allowed for each offense under the habitual offender statute.

The State argued at resentencing that sentences at the higher end of the ranges were warranted. Defense counsel countered that in light of Bryant's mental health issues, mid-range sentences were more appropriate. The 65-year sentences imposed fall within the statutory range, are far from the maximum available sentences of 150 and 198 years, and were ordered to be served concurrently. Notably, the sentences imposed are actually less than the midrange sentences sought by Bryant's counsel at resentencing.

Under the facts and circumstances of this case, and in consideration of the harm done to society, the sentences imposed on Bryant are not disproportionate and do not shock the sense of justice. The sentences were absolutely justified. There is no showing that the trial judge abused his discretion in the sentences imposed. These sentences are not unconstitutionally excessive.

## CONCLUSION

Bryant's habitual offender sentences are AFFIRMED.