Judgment rendered September 27, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,290-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

TOBIAS WILLIAMS                       Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 360,400

Honorable Chris Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT           Counsel for Appellant
By: G. Paul Marx

TOBIAS WILLIAMS                       Pro Se

JAMES E. STEWART, SR.                 Counsel for Appellee
District Attorney

WILLIAM JACOB EDWARDS
KODIE K. SMITH
BRITTANY B. ARVIE
JOHN CLAUDE PHILLIPS
Assistant District Attorneys

* * * * *

Before STEPHENS, HUNTER, and ELLENDER, JJ.

HUNTER, J., concurs in part and dissents in part with written reasons.

**ELLENDER, J.**

The defendant, Tobias Williams, was convicted of aggravated flight from an officer, and subsequently adjudicated a fourth felony offender and sentenced to life imprisonment. Williams now appeals his habitual offender adjudication and sentence. For the following reasons we affirm Williams's conviction and fourth felony offender status, but vacate his sentence and remand for resentencing.

## FACTS

Around 3:40 a.m. on August 17, 2018, Shreveport Police Department ("SPD") Officer Corey Rabalais was on patrol in the Highland-Stoner Hill neighborhood of Shreveport when he observed an SUV with an obscured license plate driving down Stoner Avenue. Officer Rabalais initiated a traffic stop by turning on his lights and siren, then pulling his patrol car behind the SUV; however, the driver, later identified as Tobias Williams, refused to comply and continued to drive away. A chase ensued during which Williams committed numerous traffic violations recorded by Officer Rabalais's dash camera in his patrol car. The footage showed multiple 25 and 35 mph speed limit signs on the roads which Williams traveled. The footage further revealed Officer Rabalais was driving at times in excess of 60 mph in order to keep up with Williams. Williams is also seen operating his vehicle on the wrong side of the road, failing to stop at multiple red lights, and driving through numerous stop signs.

During this high-speed pursuit, Officer Rabalais was joined by Corporal Jon Smith, also with the SPD. Cpl. Smith's dash camera recorded footage of a bicyclist on the same street as Williams and Officer Rabalais; however, Williams and Officer Rabalais turned before ever reaching the

bicyclist's position. Additionally, both recordings reflect this high-speed chase lasted about 15 minutes, having occurred between 3:40 a.m. and 3:55 a.m. that morning.

Williams eventually encountered a construction roadblock which forced him to stop his SUV. He immediately exited the vehicle and fled on foot, but Officer Rabalais was unable to catch up to him. Another SPD officer joined in the foot chase and, after spotting Williams, gave verbal commands to put his hands up and get down on the ground, which Williams ignored. At some point during the chase, Sergeant Dan Sawyer, a K9 officer with the SPD, arrived to help apprehend Williams. Sgt. Sawyer's K9 was able to detain Williams by biting his arm and holding on until Sgt. Sawyer arrived. He was arrested, then transported to the hospital for treatment of his dog bite wounds.

## PROCEDURAL HISTORY

Following arrest, Williams was charged by bill of information with one count of aggravated flight from an officer, La R.S. 14:108.1(C). Jury trial began on December 14, 2021, and resulted in Williams's conviction as charged.

The state then filed an habitual offender bill of information asserting Williams's new conviction for aggravated flight from an officer was his fourth felony offense, La. R.S. 15:529.1. Williams's three prior felony convictions were listed as follows:

1) January 28, 2008, guilty plea to Illegal Possession of Stolen Things;

2) February 11, 2016, guilty plea to Aggravated Battery; and

3) February 11, 2016, guilty plea to Illegal Possession of Stolen Firearms.

2

In a motion to quash, Williams argued his two February 11, 2016, guilty pleas should only be treated as one prior felony conviction. On May 19, 2022, the trial court held a multiple offender hearing and found Williams was a fourth felony offender. The trial court, noting its consideration of La. R.S. 15:529.1, concluded the events which led to Williams's February 11, 2016, convictions were not connected, were not a single criminal episode, and would be treated as two separate felony convictions.

## SENTENCING

On June 20, 2022, Williams was sentenced to life imprisonment at hard labor without the benefit of probation or suspension of sentence, La. R.S. 15:529.1(A)(4)(a). The trial court first listed Williams's prior felony convictions and reiterated its finding Williams was a fourth felony habitual offender. The trial court also noted two of Williams's four felony convictions were for crimes of violence, aggravated battery and the instant conviction for aggravated flight from an officer, La. R.S. 14:2(B)(5) and (39). In support of the life sentence, the trial court stated it had considered the sentencing guidelines, then thoroughly detailed Williams's extensive criminal record, expressed its belief Williams was not remorseful, and concluded Williams did not understand the seriousness of his crimes, nor would he in the future. The trial court also issued written reasons for judgment.

After sentencing, Williams filed a motion to reconsider, which was subsequently denied. This appeal followed.

## DISCUSSION

### *Habitual Offender Status*

In his first assignment of error, Williams argues he should only be a third felony offender because his February 11, 2016, convictions for both aggravated battery and illegal possession of stolen firearms occurred on the same day, and should have been treated as just one prior felony for habitual offender purposes.

La. R.S. 15:529.1(A) defines who is an habitual offender, and then goes on to provide the various sentencing enhancements depending on the total number of felony convictions:

> A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows…

For a defendant to receive an enhanced penalty under La. R.S. 15:529.1, the state must prove prior felony convictions and that the defendant is the same person who committed the prior felonies. *State v. Brown*, 11-1656 (La. 2/10/12), 82 So. 3d 1232. Both the identity of the defendant, and the prior convictions alleged, must be proved beyond a reasonable doubt. La. R.S. 15:529.1(D)(1)(b). The Louisiana Supreme Court has consistently held that the state is not required to use a specific type of evidence to carry its burden at a habitual offender hearing. Rather, prior convictions may be proved by any competent evidence. *State v. White*, 13-1525 (La. 11/8/13), 130 So. 3d 298. Various methods of proof establishing identity have been recognized as sufficient to sustain the state's burden of proof, including testimony of witnesses, expert opinion as to fingerprints, photographs contained in duly

4

authenticated records, and evidence of identical driver's license number, sex, race, and date of birth. *State v. Payton*, 00-2899 (La. 3/15/02), 810 So. 2d 1127.

Williams does not dispute the state proved beyond a reasonable doubt that he is the same person who was convicted of illegal possession of stolen things on January 28, 2008, aggravated battery on February 11, 2016, and illegal possession of stolen firearms on February 11, 2016.[1] Rather, Williams argues the two February 11, 2016, convictions should only be treated as one for habitual offender purposes.

In the seminal case of *State v. Shaw*, 06-2467 (La. 11/27/07), 969 So. 2d 1233, the Louisiana Supreme Court clarified its interpretation of La. R.S. 15:529.1. Prior to *Shaw*, the court followed the principle that if multiple convictions were obtained on one day, then they could only be treated as one conviction for habitual offender purposes, *See State ex rel. Porter v. Butler*, 573 So. 2d 1106 (La. 1991). In *Shaw*, the court ultimately concluded a departure from the "one day, one conviction" rule was necessary. The court first noted the starting point in the interpretation of any statute is the language of the statute itself. *Id.* In overturning *Porter*, the Louisiana Supreme Court found that *Porter* had "deviated from well-settled rules of statutory construction" in refusing to extend its holding to multiple convictions arising out of a single criminal act. *Id.*

The *Shaw* court gave two reasons for overturning *Porter*. First, the court stated the *Porter* court failed to give effect to the clear and

---

[1] We have thoroughly reviewed this record and find the state has satisfied its burden by proving that Williams was the same person who was convicted of these offenses.

unambiguous language of La. R.S. 15:529.1. *Id.* The *Shaw* court reasoned

the statute is plain, straightforward, and reflects an intent to expose a person

who has previously been convicted of a felony to the imposition of habitual

offender penalties for any felony committed after the date of the prior felony

conviction. *Id.* Second, the court asserted *Porter* failed to construe La. R.S.

15:529.1 with its object and purpose, stating:

> The purpose of the statue, to dissuade first offenders from
> committing subsequent felonies and to punish more harshly
> those who commit the most crimes, is served only when the
> repeat offender is subject to sentence enhancement for each
> subsequent felony. Enhancing the sentence on only one of
> multiple convictions arising out of a single criminal episode
> actually thwarts the goal of protecting society by removing the
> most egregious offenders from its midst. *Id.*

The *Shaw* court ultimately held:

> [T]he language of La. R.S. 15:529.1 contains no prohibition
> against enhancing multiple sentences obtained on the same date
> arising out of a single criminal act or episode. In clear and
> unambiguous terms, the statute exposes a person who has
> previously been convicted of a felony to enhanced penalties for
> any felony committed after the date of the prior felony
> conviction. There is no statutory bar to apply the habitual
> offender law in sentencing for more than one conviction
> obtained on the same date, whether the convictions result from
> separate felonies committed at separate times or arise out of a
> single criminal act or episode.

This holding evidences the Louisiana Supreme Court's departure from the

previous "one day, one conviction" rule and clarified that habitual offender

enhancement applies to multiple felonies committed on the same day, even

if they arise out of a single criminal act or episode. The *Shaw* court closely

examined the legislative intent of La. R.S. 15:529.1 and concluded its intent

is to punish repeat offenders for ***each*** of their subsequent felonies. It is with

this interpretation and holding in mind that we address the arguments made

by Williams in this case.

6

Williams erroneously relies on our holding in *State v. Cass*, 44,411 (La. App. 2 Cir. 8/19/09), 17 So. 3d 486, where multiple convictions arising out of a single criminal episode were counted as only one prior felony for purposes of La. R.S. 15:529.1. While the holding in *Cass* was correct, Williams's case is clearly distinguishable. The defendant in *Cass* was initially convicted of his first two felonies on the same day, September 14, 1974. In 2008, Cass was convicted of a subsequent felony and the state then sought to adjudicate him a third felony offender. *Id.* This Court upheld the trial court's ruling that Cass was only a second felony offender and reasoned that since the defendant did not have any felonies prior to committing his two felonies on the same day in 1974, his third conviction in 2008 was merely his first subsequent felony, and second overall, for habitual offender purposes. *Id.* The reasoning in *Cass* is consistent with a clear and unambiguous reading of La. R.S. 15:529.1(A), which provides that any person who *subsequently* commits another felony after having *first* been convicted of a felony, becomes an habitual offender. In *Cass*, the state was attempting to use that defendant's first and second felony convictions, obtained on the same day, to classify him as a third felony offender, something that is prohibited by a clear reading of La. R.S. 15:529.1. Further, this Court noted La. R.S. 15:529.1(B) specifically provides that multiple convictions obtained on the same day prior to October 19, 2004, are to be counted as one conviction, which was factually applicable in *Cass* because that defendant's predicate offenses all occurred in 1974.

The case *sub judice* is distinguishable from *Cass* for two reasons. First, Williams received his *first* felony conviction in 2008, followed by his two *subsequent* felony convictions on February 11, 2016. Unlike the

7

defendant in *Cass*, Williams committed two additional felonies between his first felony conviction in 2008 and his most recent felony. Additionally, unlike in *Cass*, all of Williams's felony convictions occurred well after October 19, 2004, the cutoff date provided in La. R.S. 15:529.1(B) for preservation of the "one day, one conviction" rule. In light of these two reasons, we do not find the *Cass* holding applicable here. Consequently, we are left with the interpretation of La. R.S. 15:529.1 provided by the Louisiana Supreme Court in *Shaw* and must adhere to that analysis in examining the issues related to Williams.

Williams argues his two February 11, 2016, felony convictions are not sufficiently separate and distinct because the state failed to adequately prove they were not part of the same course of criminal conduct, and therefore can only be counted as one predicate offense. As detailed above, the *Shaw* court held the habitual offender statute can apply to convictions that occurred on the same day, regardless of whether the felonies were committed at separate times or arose out of a single criminal act or episode. Consequently, it does not matter whether Williams's February 11, 2016, convictions were separate and distinct criminal episodes for habitual offender purposes. On this basis alone, we find Williams is a fourth felony offender.

However, even if a separate and distinct aspect for each crime is required, which we specifically find it is not, this record sufficiently supports these were separate and distinct criminal episodes. Williams's first conviction on February 11, 2016, was for aggravated battery, a charge he received after accompanying another individual during a shooting which

8

occurred around 9:00 p.m. on December 9, 2010.[2] Approximately three hours after the shooting, at 12:05 a.m. the next day, police arrived at the home of Williams's girlfriend searching for him. While there, they located Williams and, in his possession, a semi-automatic handgun which had already been reported stolen. This led to Williams's conviction of illegal possession of stolen firearms.

Although the offenses which led to Williams's February 11, 2016, convictions both occurred within a relatively short period of time, they did not arise out of a single criminal act or course of conduct. Williams's first offense took place at a separate location and involved his being an accomplice to a shooting that led to his guilty plea as a principal to aggravated battery. The gun used in that shooting was purported to be a revolver. The second offense, though only taking place a few hours after the first, actually occurred the following day after midnight. Additionally, the second offense took place at an entirely different location, the apartment of Williams's girlfriend. The gun seized was not a revolver, but a semi-automatic weapon. Further, Williams's second offense was based on his possession of a stolen firearm, which had been reported stolen several days prior. As such, these offenses, though close in time, were not part of a single criminal act or course of conduct. Even if *Shaw* were not controlling law, which it is, the trial court here did not err in counting Williams's two February 11, 2016, convictions as separate offenses for habitual offender purposes.

---

[2] The record does not reveal why such a significant period of time elapsed from the date of the offense in December of 2010 to the date of the plea in February 2016.

Furthermore, designating Williams's February 11, 2016, convictions as separate offenses accomplishes the legislative intent of La. R.S. 15:529.1. As the *Shaw* court explained, the purpose of the statute is both to deter subsequent felonies from being committed and to punish more severely those who commit multiple crimes. To accomplish this purpose, a repeat offender should be subjected to an enhancement for each subsequent felony he commits. *Shaw*, *supra*. If Williams's February 11, 2016, convictions were counted as one, and he were merely adjudicated a third felony offender, Williams would be receiving only one enhancement for two crimes committed after his first felony conviction. As the *Shaw* court pointed out, enhancing a sentence for only one of multiple felony convictions occurring on the same day subsequent to a previous conviction thwarts the goal of protecting society, and the defendant avoids the more severe consequences of committing additional crimes. Williams has been convicted of four felonies and his enhanced sentencing exposure rightly reflects the consequences of his habitual felonious behavior.

Williams was properly adjudicated a fourth felony offender and this assignment of error lacks merit.

*Excessive Sentence*

In his second assignment of error, Williams argues his sentence of life imprisonment is constitutionally excessive in light of the nature of his prior felony convictions and the circumstances surrounding his instant conviction. He maintains that aggravated flight from an officer should not be classified as a crime of violence since he did not create a risk of harm or injury, as there were no vehicles present during the offense and no injuries were reported. Williams also points out the trial court did not order a presentence

10

investigation report ("PSI"), so the record is limited regarding his personal history.

In reviewing a sentence for excessiveness, an appellate court uses a two-step process. First, the record must reflect the trial court took the criteria set forth in La. C. Cr. P. art. 894.1. into account. The goal of La. C. Cr. P. art. 894.1 is to articulate an adequate factual basis for the sentence, not rigid or mechanical compliance with its provisions. *State v. Lanclos*, 419 So. 2d 475 (La. 1982). The trial court is not required to list every aggravating or mitigating circumstance, so long as it adequately considered them in particularizing the sentence to the defendant. *State v. Smith*, 433 So. 2d 688 (La. 1983). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. These elements are consistently utilized by this Court when evaluating a sentence for constitutional excessiveness. *See State v. McFarlin*, 54,754 (La. App. 2 Cir. 1/25/23), 354 So. 3d 888; *State v. McCarthy*, 55,038 (La. App. 2 Cir. 6/28/23).

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Trotter*, *supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Trotter*, *supra*; *State v. Bell*, 53,712 (La. App. 2 Cir.

11

1/13/21), 310 So. 3d 307.  On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion.  *State v. Trotter*, *supra*; *State v. Bell*, *supra*.

The second step in reviewing a sentence for excessiveness is a determination of whether the sentence is constitutionally excessive.  A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the crime or nothing more than a purposelessness and needless infliction of pain and suffering.  *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Trotter*, *supra*.  A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.  *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.  As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses.  *State v. Cozzetto*, 07-2031 (La. 2/15/08), 974 So. 2d 665; *State v. Gibson*, 54,400 (La. App. 2 Cir. 5/25/22), 338 So. 3d 1260, *writ denied*, 22-00978 (La. 3/7/23), 356 So. 3d 1053.

For the crime of aggravated flight from an officer, the longest sentence Williams could have received was five years at hard labor, La. R.S. 14:108.1(E)(1).  However, as a fourth felony offender, Williams faced up to life in prison.  La. R.S. 15:529.1(A)(4)(a)-(c) provides the following sentencing ranges for fourth felony offenders:

> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life than the following sentences apply:
>
>> (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but

in no event less than twenty years and not more than his natural life.

(b) If the fourth felony and no prior felony is defined as a crime of violence under R.S. 14.2(B) or as a sex offense under R.S. 15:541, the person shall be imprisoned for not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction. If twice the possible sentence prescribed for a first conviction is less than twenty years, the person shall be imprisoned for twenty years.

(c) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), or a sex offense as defined in R.S. 15:541 when the victim is under the age of eighteen at the time of commission of the offense, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

As set forth in La. R.S. 15:529.1(A)(4)(c), two prior felonies, as well as the fourth felony, must be crimes of violence to subject a defendant to a mandatory life sentence as a fourth felony offender. While Williams's fourth felony is defined as a crime of violence, only one of his prior three felonies, aggravated battery, meets that criterion, La. R.S. 14:2(5) and (39); therefore, his sentencing range was 20 years to life pursuant to La. R.S. 15:529.1(A)(4)(a).

Considering the trial court imposed the maximum sentence of life imprisonment, this Court must determine whether the sentence imposed is constitutionally excessive in light of the record before us. After a thorough review of the record, we are constrained to find it is inadequate to make such a determination. The first step in evaluating a sentence for excessiveness, to ensure it is particularized for the defendant, is evaluating whether there was adequate compliance with La. C. Cr. P. art 894.1. As set forth by the Louisiana Supreme Court in *State v. Jones*, *supra*, and recently reiterated by this court in *State v. Trotter*, *supra*, *State v. McFarlin*, *supra*, and *State v.*

13

*McCarthy*, *supra*, there are four general categories that should be considered by the trial court before imposing a sentence:

1) Personal history (age, family ties, marital status, health, employment record),

2) Prior criminal record,

3) Seriousness of the offense, and

4) Likelihood of rehabilitation.

The trial court thoroughly considered Williams's extensive criminal record and also opined it believed Williams could not be rehabilitated; however, there is no mention of anything about his personal history, nor is there an evaluation of the seriousness of the instant offense and his prior felonies.

At sentencing, the trial court read into the record its written reasons for judgment, stating the following:

> In determining the length of the sentence to be imposed, this court considered, in addition to the sentencing guidelines, the following factors:
>
> 1) The defendant has a long criminal history dating back to 2008. He has been arrested and charged at least 18 different times from 2008 to the present. He has three prior felony convictions, not including the latest for aggravated flight from an officer in the instant case. Two of the four felony convictions are crimes of violence.
>
> 2) The defendant has been arrested, charged and/or convicted of multiple gun related crimes.
>
> 3) The defendant has been arrested and charged with multiple crimes which show violent tendencies, those being resisting an officer, four counts of simple battery, one count of aggravated second degree battery.
>
> 4) The defendant further has been arrested for attempted first degree murder, two counts of attempted second degree murder in 2016, one count of second degree murder in 2016, and for three counts of second degree murder as late as 2020.

14

5) The defendant has been sentenced to different hard labor sentences only to be released and commit additional crimes, the latest of which is a crime of violence.

6) The defendant does not appear to be remorseful for his actions nor take any responsibility for them.

7) His criminal behavior, including four felonies and nearly twenty arrests and charges, lead this court to believe he has not understood the seriousness of his crimes and has no reason to believe he will in the future.

Although the trial court did not specifically reference Art. 894.1 while imposing Williams's sentence, the trial court did say it had considered the sentencing guidelines. As stated in *State v. Smith*, *supra*, the trial court is only required to consider the Art. 894.1 factors, not list every aggravating or mitigating circumstance. The trial court did thoroughly summarize Williams's significant criminal history and its belief concerning the possibility of rehabilitation. We note that in addition to his four felony convictions, Williams's multiple arrests for murder are particularly concerning. The record is unclear as to whether any murder charges are pending.

The trial court made no mention of two of the four important elements for consideration set forth in *State v. Jones*, *supra*, and *State v. Trotter*, *supra*, namely Williams's personal history (age, family ties, marital status, health, employment record) and the seriousness of his offense. Consideration of these important elements was especially warranted here since Williams was exposed to a such a vast sentencing range, 20 years to life in prison, La. R.S. 15:529.1(A)(4)(a). No PSI was ordered and, while we recognize that La. C. Cr. P. art. 875 does not mandate one, in light of this large potential sentencing range, a PSI might have shed some light on the reasons and justifications for Williams's maximum life sentence. Certainly

15

it would have given this Court a more complete record to review in determining whether the sentence imposed is properly tailored to this defendant. *See State v. Parks*, 54,888 (La. App. 2 Cir. 12/14/22), 352 So. 3d 166.

In addition to the lack of consideration of Williams's personal history, the trial court did not articulate its consideration of the seriousness of the instant offense, along with Williams's prior felonies, in evaluating whether Williams is one of the worst offenders, and these are the worst offenses, warranting a maximum life sentence. While we will vacate this sentence and pretermit a discussion of whether a life sentence is constitutionally excessive, we do note the following regarding Williams's convictions for consideration by the trial court at resentencing.

Williams's instant conviction of aggravated flight from an officer is defined, in pertinent part, in La. R.S. 14:108.1(C) and (D), as:

C. The intentional refusal of a driver to bring a vehicle to a stop, under circumstances wherein human life is endangered knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed and offense.

D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle commits at least two of the following acts:

  1. Leaves the roadway or forces another vehicle to leave the road way.

  2. Collides with another vehicle or watercraft.

  3. Exceeds the posted speed limit by at least twenty-five miles per hour.

  4. Travels against the flow of traffic or in the case of watercraft, operated the watercraft in a careless manner in violation of R.S. 34:851.4 or in a reckless manner in violation of R.S. 14:99.

16

5.  Fails to obey a stop sign or a yield sign.

6.  Fails to obey a traffic control signal device.

Williams does not dispute the record contains sufficient evidence to support that he committed at least two of the acts set forth in La. R.S. 14:108.1(D). Instead, he argues his conviction should not be considered a crime of violence since human life was not endangered as his flight from an officer occurred in the early morning hours when no one else was on the street. While Williams is correct that the roads were empty, other than a bicyclist on an adjacent street not directly in the roadway where the pursuit occurred, multiple officers' lives were endangered, at a minimum, by their 15-minute high-speed chase of Williams. Thankfully, Williams did not cause anyone serious bodily injury. Additionally, the legislature has classified aggravated flight from an officer as a crime of violence without regard to whether someone was actually injured, La. R.S. 14:2(39). Anytime an individual chooses to flee from police and leads officers on a high-speed pursuit, it is dangerous and potentially life-threatening conduct. Williams's argument may lend itself more to possible mitigation as to the relative seriousness of his offense when compared to other high-speed chases where multiple bystanders are actually put in harm's way or accidents occur. The trial court will need to evaluate the facts of this case to determine the relative seriousness of Williams's conduct, in addition to the relative seriousness of his prior convictions.

On this record, considering the vast sentencing exposure Williams faced, we simply cannot determine whether the maximum life sentence imposed is constitutionally excessive. Consequently, we are constrained to

17

vacate Williams's sentence and remand the matter to the trial court for resentencing consistent with the aforementioned considerations.

*Pro se brief*

Williams submitted an untimely pro se brief in which he lists six assignments of error, with each having been thoroughly evaluated and considered by this court.[3] We find, on the record before us, that these pro se assignments lack merit and do not warrant any further discussion.

**CONCLUSION**

For the reasons expressed, Tobias Williams's conviction and his fourth felony habitual offender adjudication are affirmed. We vacate the sentence imposed and remand for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.**

---

[3] As to pro se assignments of errors (1) and (2), which are nearly identical arguments, Williams alleges his right to a speedy trial was violated, but there is no motion for speedy trial in the record; assignment (3) alleges his attorney failed to advise him felons could serve as jurors, and that his attorney and the prosecutor acted in cohort to ensure his conviction, claims that are more appropriate for post conviction relief ("PCR"); assignment (4) alleges instructing the jury to return a unanimous verdict was unfair as they should have been instructed on the law in effect when he committed his crime in 2018, that a verdict of 10-2 was all that was required to convict him; assignment (5) alleges his 2008 conviction should not have been used as a predicate offense to enhance his sentence because the five-year cleansing period set forth in La. R.S. 15:529.1(C)(1) had lapsed; however, the record reveals there was never a five-year period as defined in the article in which Williams did not commit a subsequent felony offense; assignment (6) claims ineffective assistance of counsel, but Williams makes no argument as to why and, even if he did, it would be more appropriate for PCR.

**HUNTER, J., concurring in part; dissenting in part.**

I concur in the majority's decision to vacate the defendant's sentences and remand for resentencing, as the record is inadequate to determine whether the sentence imposed is constitutionally excessive.

However, based on the record before us, I do not believe the evidence was sufficient to support the habitual offender adjudication. The proper action for an appellate court faced with a habitual offender adjudication based on insufficient evidence is to reverse the habitual offender adjudication, vacate the sentence, and remand for resentencing. *State v. Taylor*, 54,110 (La. App. 2 Cir. 11/17/21), 329 So. 3d 1141; *State v. Meadows*, 51,980 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1018. Consequently, I would reverse the habitual offender adjudication, vacate the sentence, and remand for resentencing.

1